# UNITED STATES DISTRICT COURT
## THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| KHARI WHEELER, on behalf of himself and a class of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>BAYER CORPORATION, BAYER HEALTHCARE LLC, and BAYER HEALTHCARE PHARMACEUTICALS INC.<br><br><br>Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Khari Wheeler ("Plaintiff"), individually and on behalf of himself and all others similarly situated, brings this class action lawsuit against Defendants Bayer Corporation, Bayer HealthCare LLC, and Bayer HealthCare Pharmaceuticals Inc. (collectively, "Bayer" or "Defendants") based upon personal knowledge as to himself, the investigation of his counsel, and on information and belief as to all other matters.

## INTRODUCTION

1.     This is a class action lawsuit against Defendants regarding the manufacture, distribution, and sale of their Alka-Seltzer-branded "Non-Drowsy" over-the-counter cold and flu medicines that contain Dextromethorphan Hydrobromide ("the "Non-Drowsy Products").[1]

2.     The Non-Drowsy Products state prominently on the front of their product packaging that they are "Non-Drowsy" and "Day" products.

---

[1] The Non-Drowsy Products include: Alka-Seltzer Plus – Severe Cold PowerFast Fizz Non-Drowsy Citrus Effervescent Tablets; Alka-Seltzer – Severe Cold PowerFast Fizz Day Non-Drowsy Citrus Effervescent Tablets, Alka-Seltzer Plus – Cold & Flu PowerMAX Gels Day Non-Drowsy, Alka-Seltzer Plus – Maximum Strength Cold & Flu Day Non-Drowsy Liquid Gels; Alka-Seltzer Plus – Cold Day Non-Drowsy Effervescent Tablets, Alka-Seltzer Plus – Severe Cold PowerFast Fizz Day Non-Drowsy Citrus Effervescent Tablets; Day/Night Severe Cold and Flu (combo pack); and Alka-Seltzer Plus – Cough, Mucus & Congestion PowerMAX Gels Day Non-Drowsy.

1



3.     By prominently labeling the products as "Non-Drowsy," Defendants led Plaintiff and other consumers to believe that the Non-Drowsy Products do not cause drowsiness, and that drowsiness is not a side effect of the products.

4.     Defendants also led Plaintiff and other consumers to believe that the Non-Drowsy Products are for use during the "Day" and intended to be used during waking hours.

5.     However, one of the active ingredients in the Non-Drowsy Products is Dextromethorphan Hydrobromide ("DM HBr"). While the average consumer may not be aware, drowsiness is a documented side effect of DM HBr at dosages recommended by Defendants in respect to the Non-Drowsy Products. Authorities such as the National Library of Medicine and Mayo Clinic list drowsiness as a side

effect of this ingredient.[2]

6. Plaintiff and Class members purchased the Non-Drowsy Products with the expectation that the products would not cause drowsiness and that they were intended to be used during waking hours. Because Defendants sold products to consumers that cause drowsiness, Plaintiff and the Classes were deprived of the benefit of their bargain.

7. Accordingly, Plaintiff brings this action on behalf of himself and the Class for equitable relief and to recover damages and restitution for: (i) violations of Michigan's Consumer Protection Act ("MCPA"), Mich. Comp. Laws Ann. §§ 17500, *et seq*.; (ii) unjust enrichment; (iii) negligent misrepresentation; and (iv) intentional misrepresentation.

## **PARTIES**

8. Plaintiff Khari Wheeler is a resident and citizen of the state of Michigan. In March of 2022, Plaintiff Wheeler purchased an Alka-Seltzer Plus® Maximum Strength Sinus Congestion & Pain combo pack from a Walmart retail store located in Dearborn, Michigan. When purchasing the Non-Drowsy Product,

---

[2]Dextromethorphan: MedlinePlus Drug Information, National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682492.html (last accessed March 23, 2022); *Mayo Clinic, Drugs and Supplements Dextromethorphan (Oral Route)*, https://www.mayoclinic.org/drugs-supplements/dextromethorphan-oral-route/side-effects/drg-20068661?p=1 (last accessed March 23, 2022).

Plaintiff Wheeler reviewed the accompanying labels and disclosures, and understood them as representations and warranties by Defendants that the "Non-Drowsy" "Day" product would not cause drowsiness and could be used during the day. Plaintiff Wheeler relied on these representations and warranties in deciding to purchase the Non-Drowsy Product and these representations and warranties were part of the basis of the bargain in that he would not have purchased the Non-Drowsy Product if he had known that it would cause drowsiness. When Plaintiff Wheeler took the medication as directed by Defendant, he became unexpectedly drowsy.

9.     Defendant Bayer Corporation is an Indiana corporation with its principal place of business and headquarters located at 100 Bayer Road, Bldg. 4, Pittsburgh, PA, 15205. Bayer Corporation is a subsidiary of Bayer AG, which was founded in Germany in 1863 by Friedrich Bayer and is one of the world's largest pharmaceutical companies. At all relevant times hereto, Bayer Corporation was engaged in manufacturing, marketing, distributing, and advertising Non-Drowsy Products throughout the United States. Bayer Corporation created and/or authorized the false and misleading advertising and labeling of the Non-Drowsy Products. the false and misleading advertising and labeling of the Non-Drowsy Products.

10.     Defendant Bayer HealthCare LLC is a Delaware company with its principal place of business in Whippany, New Jersey, and was doing business in the states of Michigan during all relevant times. Directly and through its agents, Bayer

HealthCare LLC has substantial contacts with and receives substantial benefits and income from and through the State of Michigan. Bayer HealthCare LLC is one of the owners, manufacturers, or distributors of the Non-Drowsy Products, and is one of the companies that created and/or authorized the false and misleading labeling for the Non-Drowsy Products.

11.    Defendant Bayer HealthCare Pharmaceuticals Inc. is a Delaware corporation with its principal place of business in Whippany, New Jersey, and was doing business in the State of Michigan during all relevant times. Directly and through its agents, Bayer HealthCare Pharmaceuticals Inc. has substantial contacts with and receives substantial benefits and income from and through the State of Michigan. Bayer HealthCare Pharmaceuticals Inc. is one of the owners, manufacturers, or distributors of the Non-Drowsy Products, and is one of the companies that created and/or authorized the false and misleading labeling for the Non-Drowsy Products.

## **JURISDICTION AND VENUE**

12.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than one hundred (100) Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from the Defendants.

13.     This Court has personal jurisdiction over Defendants because Defendants sold the Non-Drowsy Products to consumers in Michigan, including to Plaintiff. Defendants derive substantial revenue from sales of their products in this State, with knowledge that their products are being marketed and sold for use in this State.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of Defendants' conduct giving rise to the claims occurred in this District, including Plaintiff Wheeler's purchase of the Non-Drowsy Product.


## FACTUAL ALLEGATIONS

**A.     Defendants Manufacture, Distribute, Market, and Sell the Non-Drowsy Products**

15.     Defendants manufacture, distribute, market, and sell the Non-Drowsy Products.

16.     Each of the Non-Drowsy Products prominently state on its label that the product is "Non-Drowsy" and for "Day" use.

17.    For example, below is an image of Bayer's Alka-Seltzer Plus Cold & Flu PowerMAX Gels Day Non-Drowsy product label.



18.    Similarly, the Alka-Seltzer Plus – Severe Cold PowerFast Fizz product label includes the same representations.

7



19.    The Non-Drowsy Products are also sold in combo packs with "Night" products. For example, below is an image of the Alka-Seltzer Plus Severe Cold PowerFast Fizz Non-Drowsy Effervescent Tablet combo pack which includes "Day" and "Night" formulations.



8

20.    The "Day" product includes the "Non-Drowsy" representation, while the "Night" product is silent to Non-Drowsy characteristics.

21.    Both the "Day" and "Night" products contain DM HBr, the ingredient in the Non-Drowsy Products that causes drowsiness.

22.    The "Non-Drowsy" and "Day" representations are materially the same across the various Non-Drowsy Products.

23.    Based on the prominent "Non-Drowsy" and "Day" representations included on the front of each product, a reasonable consumer would believe that the products do not cause drowsiness and that drowsiness is not a side effect of the product.

**B.    Defendants' False and Misleading Advertising Campaign**

24.    One of the active ingredients in the Non-Drowsy Products is DM HBr.

25.    Drowsiness is a well-documented side effect of DM HBr.

26.    For example, the Mayo Clinic and the National Library of Medicine list drowsiness as a side-effect of the ingredient.[3]

27.    Manufacturers and distributors know that DM HBr causes drowsiness as their safety data sheets ("SDS") explicitly state that DM HBr causes and may

---

[3]*Dextromethorphan: MedlinePlus Drug Information, National Library of Medicine*, https://medlineplus.gov/druginfo/meds/a682492.html (last accessed March 23, 2022); *Mayo Clinic, Drugs and Supplements Dextromethorphan (Oral Route)*, https://www.mayoclinic.org/drugs-supplements/dextromethorphan-oral-route/side-effects/drg-20068661?p=1 (last accessed March 23, 2022).

cause drowsiness.

28.     According to Pfizer's safety datasheet for their Robitussin cough medicine, "Common adverse reactions associated with the clinical use of dextromethorphan hydrobromide include drowsiness, dizziness, and nausea and vomiting."[4]

29.     Santa Cruz Biotechnology Inc lists acute health effects on their SDS following the consumption of DM HBr such as "Drowsiness, dizziness, excitation, mental confusion, and gastro-intestinal disturbances have been described following dextromethorphan. Administration."[5]

30.     In other words, sedation is a well-known adverse event of this ingredient.[6]

31.     In fact, the Federal Aviation Administration prohibits pilots from flying

---

[4] *Pfizer, Safety Data Sheet*,
https://imgcdn.mckesson.com/CumulusWeb/Click_and_learn/SDS_9PFIZ_ROBIT
USSIN_DM_SYRP_ADLT_COUGH_CHEST_HONEY_4OZ.pdf (last accessed March 23, 2022).

[5]     Dextromethorphan    Hydrobromide,    Material    Safety    Data    Sheet,
https://datasheets.scbt.com/sc-204716.pdf (last accessed March 23, 2022).

[6] *See* Martin, E., Narjoz, C., Decleves, X., Labat, L., Lambert, C., Loriot, M. A., ... & Pickering, G. (2019). Dextromethorphan analgesia in a human experimental model of hyperalgesia. *Anesthesiology*, *131*(2), 356-368; *see also* Siu, A. and Drachtman, R. (2007), Dextromethorphan: A Review of N-methyl-d-aspartate Receptor Antagonist in the Management of Pain. CNS Drug Reviews, 13: 96-106. https://doi.org/10.1111/j.1527-3458.2007.00006.x ("DM is used clinically in the form of salt, dextromethorphan hydrobromide...The majority of DM's adverse effects occur at the level of the CNS. Neurologic toxicity associated with DM includes dystonia, fatigue, drowsiness, and dizziness.").

after taking medicines that contain dextromethorphan. The document titled, "What Over-the-Counter (OTC) medications can I take and still be safe to fly" lists DayQuil as a "No Go" product because it contains dextromethorphan.[7] The Non-Drowsy Products and DayQuil both contain this ingredient.

32. The Non-Drowsy Products do not disclose anywhere on the packaging that they do or can cause drowsiness, or that drowsiness is a side effect.

33. As such, Defendants' advertising campaign is false and misleading.

34. The Food and Drug Administration ("FDA") prohibits labeling drugs with "false or misleading" statements. 21 C.F.R. § 201.6. It is misleading to label a product "Non-Drowsy" when it does cause drowsiness, or if drowsiness is a known side effect of one of its active ingredients.

35. While the Federal Regulations relating to the labelling of antitussive drug products do not require products with DM HBr to include an affirmative "drowsiness" warning, *see generally*, 21 C.F.R. § 341.74, Defendants could have simply omitted the false and misleading "Non-Drowsy" representations from the product labels.

36. Defendants know that the "Non-Drowsy" representation is false and

---

[7] *Federal Aviation Administration, What Over-the-Counter (OTC) medications can I take and still be safe to fly* https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf (last accessed March 23, 2022).

misleading. In fact, Defendants sell products that contain DM HBr but are not advertised as "Non-Drowsy." For example, Coricidin is a cold symptom relief product for people with high blood pressure. Coricidin is manufactured, sold, and advertised by Defendants. This product contains DM HBr and omits false representations by not labeling the product as "Non-Drowsy."



37.     Or, if Defendants wanted to differentiate their Day products from their Night products, they could have indicated on the product label that the Day products would cause *less* drowsiness than the Night products. For example, the below Dramamine product is advertised as a "less drowsy" formula.



38.     Defendants intended that consumers would rely on the "Non-Drowsy" and "Day" labeling so that consumers would purchase more products, pay a price premium, and buy them as alternatives to the Night products. The product labels do not warn consumers that the products cause drowsiness, may cause drowsiness, or you may get drowsy from the usage of such products thereby creating an unreasonable risk of harm.

**C.     Consumers Have Been Harmed By Defendants' False Representations**

39.     Defendants knew, or should have known, that Defendants' Non-Drowsy Products are misbranded because they contain DM HBr which causes drowsiness in consumers.

40.     Defendants knew, or should have known, that Defendants misrepresented material facts concerning the "Non-Drowsy" and "Day" representations when in fact the Non-Drowsy Products contained an ingredient that

13

causes drowsiness.

41.    Defendants knew, or should have known, the representations and statements through the product labeling prescribes dangerous uses.

42.    Plaintiff would not have purchased the Non-Drowsy Product, or would have paid less for it, had the Non-Drowsy Product that Plaintiff purchased been truthfully and accurately labeled.

## CLASS ACTION ALLEGATIONS

43.    Plaintiff brings this action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of the following Classes:

> All persons who purchased one or more of Defendants' Non-Drowsy Products in the United States for personal/household use within any applicable limitations period (the "Nationwide Class").

44.    Plaintiff brings this action individually and on behalf of the following Michigan subclass:

> All persons who purchased one or more of Defendants' Non-Drowsy Products in the state of Michigan for personal/household use within any applicable limitations (the "Michigan Subclass").

45.    Excluded from the Class and Subclass are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entities in which Defendants or their parents and any entities in which Defendants have a

14

controlling interest and their current or former employees, officers, and directors; and (3) individuals who allege personal bodily injury resulting from the use of Non-Drowsy Products.

46.     Numerosity (Rule 23(a)(1)): The exact number of members of the Class is unknown and currently unavailable to Plaintiff, but joinder of individual members herein is impractical. The Class is likely comprised of thousands of consumers. The precise number of Class members, and their addresses, is unknown to Plaintiff at this time, but can be ascertained from Defendants' records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, Internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

47.     Predominant Common Questions (Rule 23(a)(2) and (b)(3)): The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. The common and legal questions include, but are not limited to, the following:

a.   Whether the Non-Drowsy Products cause drowsiness;

b.   Whether Defendants' labelling of the Non-Drowsy Products as "Non-Drowsy" and "Day" is false, misleading, and/or deceptive;

c.   Whether Defendants violated the state consumer protection statutes alleged herein;

    d. Whether Defendants were unjustly enriched; and

    e. The nature of relief, including damages and equitable relief, to which Plaintiff and members of the Class are entitled.

48. Typicality of Claims (Rule 23(a)(3)): Plaintiff's claims are typical of the claims of the Class because Plaintiff, like all other Class Members, purchased the Non-Drowsy Products, suffered damages as a result of that purchase, and seeks the same relief as the proposed Class Members.

49. Adequacy of Representation (Rule 23(a)(4)): Plaintiff adequately represents the Class because his interests do not conflict with the interests of the members of the Class, and he has retained counsel competent and experienced in complex class action and consumer litigation. Plaintiff and his counsel will fairly and adequately protect the interest of the members of the Class.

50. Superiority (Rule 23(b)(3)): A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendants because the damages suffered by Plaintiff and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

51.     Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)): In the alternative, this action may properly be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for the Defendants; or the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

## COUNT I

**VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT**
**Mich. Comp. Laws Ann. § 445.901,** *et seq.*
**(on behalf of Plaintiff and the Michigan Subclass)**

52.     Plaintiff incorporates by reference and re-allege each and every allegation set forth above as though fully set forth herein.

53.     Plaintiff brings this cause of action on behalf of himself and members of the Michigan Subclass.

54.     Defendants, Plaintiff, and the Class members are "[p]erson[s]" within

17

the meaning of Mich. Comp. Laws Ann. § 445.902(1)(d)

55.     Defendants engaged in "trade or commerce," as defined by § 445.902(1)(g).

56.     The MCPA, (Mich. Comp. Laws Ann. § 445.901, *et seq.*) makes it "unlawful" to engage in "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . . ."[8]

57.     In the course of its trade, Defendants violated the MCPA by knowingly and intentionally misrepresenting material facts on the labels for its Non-Drowsy Products relating to the appropriate use and "Non-Drowsy" nature of the products. Defendants falsely advertised the Non-Drowsy Products by using false and misleading statements to promote the sale of the Non-Drowsy Products, as described above, including but not limited to, representing that the Non-Drowsy Products were "Non-drowsy" and were for daytime use.

58.     Specifically, by knowingly and intentionally misrepresenting material facts regarding the Non-Drowsy Products, Defendants engaged in one or more unfair or deceptive business practices prohibited by the MCPA.

59.     Defendants' misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the uniform misrepresentations when purchasing Non-Drowsy Products. Defendants' misrepresentations were a

---

[8] Mich. Comp. Laws Ann. §445.903(1).

substantial factor in Plaintiff's purchase decisions.

60.     In   addition,   reliance   can   be   inferred   because   Defendants'
misrepresentations were material, *i.e.*, a reasonable consumer would consider them
important in deciding whether to buy the Non-Drowsy Products.

61.     Defendants' misrepresentations were a substantial factor and proximate
cause in causing damages and losses to Plaintiff.

62.     As a direct and proximate result of these acts, consumers have been and
are being harmed. Plaintiff and members of the Michigan Subclass have suffered
injury and actual out-of- pocket losses because: (a) Plaintiff and members of the
Michigan Subclass would not have purchased the Non-Drowsy Product if they had
known the true facts regarding the products; (b) Plaintiff and members of the
Michigan Subclass paid a price premium due to the misrepresentations about the
product; and (c) the Non-Drowsy did not have the promised quality, effectiveness,
or value.

63.     Plaintiff seeks injunctive relief to enjoin Defendants from continuing
its unfair and deceptive acts; monetary relief against Defendants measured as the
greater of (a) actual damages in an amount to be determined at trial and (b) statutory
damages in the amount of $250; (c) reasonable attorneys' fees; (4) and any other just
and proper relief available under Mich. Comp. Laws § 445.911.

## **COUNT II**

**UNJUST ENRICHMENT**
**(on behalf of the Plaintiff and the Nationwide Class)**

64.    Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

65.    Plaintiff and Class members conferred benefits upon Defendants. Plaintiff and Class members paid money for Defendants' Non-Drowsy Products that they would not have paid had they known that the products cause drowsiness.

66.    Defendants have unjustly retained the benefits conferred upon by Plaintiff and Class members.

67.    Defendants retained those benefits under circumstances that make it inequitable for Defendants to retain such benefits. Specifically, Defendants retained those benefits even though Defendants' Non-Drowsy Products cause drowsiness. If Plaintiff and Class members had known the true nature of Defendants' Non-Drowsy Products, they would not have purchased the products. Plaintiff and Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

68.    Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Class is unjust and inequitable, Defendants must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

## COUNT III

### NEGLIGENT MISREPRESENTATION
**(on behalf of the Plaintiff and the Nationwide Class or, alternatively, the Michigan Subclass)**

69.    Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

70.    Plaintiff brings this claim against Defendants on behalf of himself and the proposed Class.

71.    Defendants have made material misrepresentations of fact concerning the nature of, and ingredients in, the Non-Drowsy Products to Plaintiff and the Class.

72.    Defendants have and had no reasonable basis for believing that their misrepresentations were true.

73.    Defendants knew, or should have known, that Plaintiff and the members of the Class would rely on the false representations about the nature of, and ingredients in, the Non-Drowsy Products.

74.    Defendants' false representations about the ingredients of the Non-Drowsy Products are objectively material to reasonable consumers, and therefore reliance upon such representations may be presumed as a matter of law.

75.    Plaintiff and members of the Class have read and reasonably relied to their detriment on Defendants' false and misleading representations, which caused them to purchase the Non-Drowsy Products.

76.    As a proximate result of Defendants' negligent misrepresentations, Plaintiff and each member of the Class has been damaged in the amount of the purchase price of the Non-Drowsy Products and any consequential damages resulting from their purchases, including sales tax.

## COUNT IV

### INTENTIONAL MISREPRESENTATION
**(on behalf of the Plaintiff and the Class or, alternatively, the Michigan Subclass)**

77.    Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

78.    Defendants have intentionally made material misrepresentations of fact concerning the nature of, and ingredients in, the Non-Drowsy Products to Plaintiff and the Class.

79.     Defendants knew that the intentional misrepresentations herein were false at the time they were made.

80.    Defendants intended that Plaintiff and members of the Class would rely on the false representations and purchase Defendants' Non-Drowsy Products.

81.    Defendants' false representations are objectively material to reasonable consumers and therefore reliance upon such representations may be presumed as a matter of law.

82.    Plaintiff and members of the Class reasonably relied to their detriment on Defendants' intentional misrepresentations.

83.     Defendants' intentional misrepresentations were a substantial factor in causing Plaintiff and members of the Class to purchase the Non-Drowsy Products.

84.     Defendants have acted with malice by engaging in conduct that was and is intended to cause injury to Plaintiff and the members of the Class.

85.     Defendants have committed fraud through their intentional misrepresentations, deceit, and/or concealment of material facts known to Defendants with the intent to cause injury to the purchasers of the Non-Drowsy Products.

86.     As a proximate result of Defendants' intentional misrepresentations, Plaintiff and the members of the Class suffered an ascertainable loss and are entitled to relief and compensatory and punitive damages, in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the proposed Classes, prays for relief and judgment against Defendants as follows:

a.     Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representatives of the Class, and designating Plaintiff's counsel as Class Counsel;

b.     Awarding Plaintiff and the Classes compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

23

c.    Awarding Plaintiff and the Classes appropriate relief, including but not limited to actual damages;

d.    For declaratory and equitable relief, including restitution and disgorgement;

e.    For an order enjoining Defendants from continuing to engage in the wrongful acts and practices alleged herein;

f.    Awarding Plaintiff and the Classes the costs of prosecuting this action, including expert witness fees;

g.    Awarding Plaintiff and the Classes reasonable attorneys' fees and costs as allowable by law;

h.    Awarding pre-judgment and post-judgment interest;

i.    For punitive damages; and

j.    Granting any other relief as this Court may deem just and proper.

//

//

//

//

*Signature on following page*

24

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: April 12, 2022                    Respectfully submitted,


                                         */s/ Nick Suciu III*
                                         Nick Suciu III (P72052)
                                         **MILBERG COLEMAN BRYSON
                                         PHILLIPS GROSSMAN PLLC**
                                         6905 Telegraph Rd., Suite 115
                                         Bloomfield Hills, MI 48301
                                         Phone: 313-303-3472
                                         Email: nsuciu@milberg.com

                                         Gary M. Klinger
                                         **MILBERG COLEMAN BRYSON
                                         PHILLIPS GROSSMAN, PLLC**
                                         227 W. Monroe Street, Suite 2100
                                         Chicago, IL 60606
                                         Phone: 866.252.0878
                                         Email: gklinger@milberg.com

                                         Mark S. Reich
                                         Courtney E. Maccarone*
                                         **LEVI & KORSINSKY, LLP**
                                         55 Broadway, 10th Floor
                                         New York, NY 10006
                                         Phone: 212-363-7500
                                         Email: mreich@zlk.com
                                         Email: cmaccarone@zlk

                                         *Counsel for Plaintiff*


                                         * Application to the Court forthcoming.